Georgia **LORD**

v.

Elliot L. **RICHARDSON**, Secretary of Health, Education & Welfare.
No. IP 71–C–560.

United States District Court,
S. D. Indiana,
Indianapolis Division.
Aug. 7, 1972.

John Paul Godich, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., for plaintiff.

Charles Goodloe, Jr., Asst. U. S. Atty., Indianapolis, Ind., for defendant.

## MEMORANDUM OPINION

NOLAND, District Judge.

Plaintiff is seeking review by the Court of the decision of the Appeals Council denying medicare benefits which plaintiff claims pursuant to Title 42, United States Code, § 1395 et seq. (Tr. at 12).* The Appeals Council reversed the decision of the Hearing Examiner. Previously, the Hearing Examiner had found that plaintiff's mother had received post-hospital extended care qualifying her for medical insurance benefits for the aged pursuant to Section 1861(i) of Title XVIII of the Social Security Act and, thus, reversed the reconsideration determination dated July 18, 1969, to the effect that the benefits were properly denied because the services received by Mrs. Nettie Lord were custodial in nature (Tr. at 27).

Plaintiff's mother, Mrs. Nettie Lord, was 78 years old when she was discharged from Community Hospital and transferred to the Colonial Crest Nursing Center (Tr. at 24). She had been admitted to the hospital because of agitation depression due to situational distress, arteriosclerosis, cerebral vascular and arteriosclerotic heart disease (Tr. at 24). Upon her admission to the nursing home, Dr. Chroniak ordered that restraints be used, that a physical therapist supervise her activities and give her ultrasound therapy to the back daily. He also ordered the administration of Thorazine both orally and by injection, as needed, to control her periods of agitation with excessive talking, moaning and constant word repetition, etc. (Tr. at 25). While in the hospital and later in the nursing home, Mrs. Lord required catheterization because of a urinary retention problem. As a result of Mrs. Lord's commitment to the Colonial Crest Nursing Center from May 10 through August 16, 1970, she was billed $1,672.87, and plaintiff, Mrs. Lord's daughter, paid $1,599.71, leaving a balance of $73.16 (Tr. at 89). Plaintiff is now suing to recover medicare benefits on behalf of her mother, now deceased, for these expenses.

The sole issue before the Court in this case is whether there is substantial evidence in the record to support the finding of the Appeals Council that the services provided to the deceased were not "skilled nursing care", but mere "custodial care" rendering the deceased ineligible for medicare benefits for confinement in an "extended care facility." For reasons that follow, the Court concludes that there is no substantial evidence supporting the decision of the Appeals Council, that the interpretation of the relevant portions of the Social Security Act by the Appeals Council was erroneous in this case.

The facts are undisputed in this case as to the care that plaintiff's deceased received while confined in the Colonial Crest Nursing Center. The following services provided are most significant to the matter before the Court: (1) catheterization, (2) injections of Thorazine; and (3) ultrasonic treatments to the deceased's back by a Registered Physical Therapist. The record clearly indicates

---

* The Court has not considered the 1971 regulations adopted by the Secretary amending 20 C.F.R., § 405, effective June 4, 1971. Such regulations will not be given retroactive application by the Court in reviewing proceedings initiated in 1969. See: Greene v. United States, 376 U.S. 149, 160, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964).

that the deceased was the recipient of such services on a continuing basis throughout her stay at the nursing home.

When these services are analyzed in light of the guidelines set forth in § 1861(h), (i), and (j) of the Social Security Act and § 405.127 of the Social Security Regulations No. 5, it is clear that the extended care services received by the deceased constituted "skilled nursing care" within the meaning of the Act. According to Appeal Council, § 405.127 of the Social Security Regulations No. 5, "skilled nursing care" requires the direct supervision of licensed nursing personnel under the general direction of a physician. Intravenous or intramuscular injections, the insertion or replacement of catheters, and heat treatments specifically ordered by a physician as part of an active treatment program requiring observation and evaluation by skilled medical personnel were listed by the Appeals Council as specific examples of skilled nursing care. (Tr. at 8).

The records of the Colonial Crest Nursing Center contained in the transcript of record now before the Court for review indicate that Dr. Chroniak submitted orders providing for Mrs. Lord to be so treated and that Mrs. Lord did receive such services (Tr. at 90–108). She was catheterized because of a urinary retention problem; she received injections of Thorazine to control her excessive periods of agitation; and she received ultrasound treatments to her back daily which were performed by a Registered Physical Therapist. Even though Mrs. Lord did receive a great deal of custodial care in addition to the foregoing, there is no substantial evidence in the record to support the Secretary's finding that Mrs. Lord did not receive "skilled nursing care." On the contrary, the records showing that Mrs. Lord received such care are undisputed in this case.

Even though the facts in this case are essentially uncontested and the services provided to Mrs. Lord appear to fully comport with the examples of "skilled nursing care" embodied in the Social Security regulations, the Appeals Council maintains that:

"Skilled paramedical services involving specialized training outside the nursing care center are not skilled nursing services. For example, physical, occupational, and speech therapy are discrete treatment modalities requiring specialized training for proper performance. A need for one or more of these therapies would not necessarily indicate a need for skilled nursing care. Skilled nursing services are required on a continuing basis when the continuing availability of skilled nursing personnel is warranted. (Section 405.127 and 405.128 of the Social Security Administration Regulations No. 5)." (Tr. at 9).

The legislative history of the Social Security Act relating to physical therapy services reveals that this interpretation is incorrect to the extent that it intimates that physical therapy does not constitute compensable skilled nursing care:

"Under present law, health insurance benefits may generally be made for physical therapy services when provided to an inpatient in a hospital or extended care facility . . ." Senate Report No. 744, 90th Cong., 1st Sess. (1967); U.S.Code Congressional and Administrative News, 90th Cong., 1st Sess., Vol. 2, at 2909 (1967).

A Congressional intention to include physical therapy treatments within the definition of "skilled nursing care" is further evidenced by the fact that medical benefits have been extended to compensate even out-patient physical therapy services in appropriate cases. 42 U.S.C. § 1395x(s)(2)(D). Moreover, Section 1861(h) of the Act defines extended care services (entitling the recipient to benefits) to include:

". . . physical, occupational, or speech therapy furnished by the extended care facility or by others under

arrangements with them made by the facility . . ."

■■ Consequently, it is the conclusion of the Court that the restrictive interpretation of the extended care provisions adopted by the Appeals Council is inconsistent with the policy and purpose of the Social Security Act. The purpose of the Act is to insure the availability of adequate medical care for the aged. Sowell v. Richardson, 319 F.Supp. 689, 691 (1970). Because this legislation creating health insurance for the aged, is remedial in nature, it should be construed liberally to effectuate the congressional purpose. *Id.*

Therefore, the decision of the Secretary must be reversed and judgment entered for the plaintiff accordingly.

The **RELIABLE LIFE INSURANCE COMPANY**, a corporation, Plaintiff,