**Angel VASQUEZ, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. 85 Civ. 6354 (WCC).**

United States District Court, S.D. New York.

April 23, 1986.

Klein, Wagner & Morris, New York City (Michael G. Wagner, of counsel), for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Rosemarie E. Matera, Sp. Asst. U.S. Atty., of counsel), for defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiff Angel Vasquez ("Vasquez" or "the claimant") brought this action under sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 405(g), 1383(c)(3) (1982), seeking review of a final determination of the Secretary of Health and Human Services ("the Secretary") that plaintiff is not disabled as defined by the Act, and therefore is not entitled to disability insurance or Supplemental Security Income ("SSI") benefits.

Vasquez has moved for judgment on the pleadings pursuant to rule 12(c), Fed.R. Civ.P., or in the alternative, for an order remanding this matter to the Secretary to permit the record to be supplemented. The Secretary has cross-moved for an order remanding this matter to the Secretary. I have reviewed the exhibits and testimony received by the Secretary, and I have concluded, for the reasons stated below, that the Secretary failed to apply the correct legal standard in reaching his decision. However, I cannot find on the current record that plaintiff is clearly entitled to benefits. Accordingly, Vasquez's motion

for judgment on the pleadings is denied; his motion to remand and the Secretary's cross-motion to remand are granted.

*Background*

Plaintiff is a 43-year-old man with a limited education (Tr. at 30–32).[1] He speaks mainly Spanish, and has difficulty reading, writing, and understanding English (Tr. at 33). For about nine years, plaintiff was employed as a truck driver and delivery man (Tr. at 34–35). In that capacity, plaintiff was regularly required to lift objects weighing several hundred pounds (Tr. at 35–36). On June 20, 1983, plaintiff injured his back while delivering packages (Tr. at 38–39).

On July 27, 1983, and again on March 23, 1984, plaintiff filed applications for disability insurance and SSI benefits (Tr. at 100–03). Both applications were denied initially (Tr. at 81–83, 120–23) and on reconsideration (Tr. at 94–99, 133–35). Plaintiff requested a *de novo* hearing of his applications, and on November 1, 1984, such a hearing was held before Administrative Law Judge Emmanuel Tannenbaum ("the ALJ").

Plaintiff was the only person who testified at the hearing. He stated that when he injured his back he immediately felt a severe pain across the lower part of his back that radiated down to his knees (Tr. at 42, 155). The pain was so intense the next morning that plaintiff could not get out of bed (Tr. at 155). Since the accident, plaintiff has continued to experience severe back and leg pain (Tr. at 42). On doctor's instructions he wears a back brace and walks with a cane (Tr. at 43). Nevertheless, he has difficulty sitting and walking (Tr. at 42–44). Plaintiff's doctors have prescribed various pain-killing medications (Tr. at 157, 160), but according to plaintiff, the medication affords him only temporary relief from his intense pain (Tr. at 51–53).

Plaintiff testified that he began seeing Dr. Thomas J. Fitzgerald, a chiropractor, on July 5, 1983 (Tr. at 39, 155). Initially, Dr. Fitzgerald treated plaintiff on a daily basis. Plaintiff continues to see Dr. Fitz-

---

**1.** All citations to the transcript refer to the pages as numbered for the complete record on appeal.

gerald about three times a week (Tr. at 40, 71, 155). Beginning in May 1984, plaintiff began seeing two physicians, Dr. Sana Bloch and Dr. Richard Memoli (Tr. at 41–42, 158–59). Drs. Bloch and Memoli each see plaintiff twice a month (Tr. at 41–42).

In addition to Vasquez's testimony, the ALJ received into evidence medical reports from a number of doctors, including plaintiff's chiropractor and treating physicians and several consulting physicians. In a report dated July 11, 1983, Dr. Fitzgerald indicated that plaintiff was "totally disabled" (Tr. at 138). Dr. Li, a Social Security Administration consulting physician, examined plaintiff in August 1983. Plaintiff exhibited muscle spasm in the hip region, limited straight-leg raising, and tenderness and pain related to the low back area. Plaintiff had difficulty squatting and bending. Dr. Li concluded that plaintiff was suffering from a severe sprain of the lumbrosacral spine. Dr. Li made no assessment of plaintiff's residual functional capacity (Tr. at 139–40).

Based on Dr. Li's report, Dr. Kovary, a nonexamining review physician, completed a Bureau of Disability Determinations "Residual Functional Capacity Assessment" form. He concluded that plaintiff could sit and stand about six hours in an eight-hour workday, and lift up to twenty-five pounds. He therefore concluded that plaintiff was capable of performing light work (Tr. at 146–48).

Dr. Sharma, a Social Security Administration consulting physician, examined plaintiff in April 1984. Plaintiff exhibited moderate paravertebral spasm in the lumbar area and limited straight-leg raising. X-rays indicated degenerative changes near the L5 disc. Nonetheless, Dr. Sharma concluded that plaintiff had no functional limitations (Tr. at 149–51). Dr. Chen, a nonexamining review physician, completed a residual functional analysis form based on Dr. Sharma's report. He concluded that plaintiff could sit and stand six hours in an eight-hour workday, and could lift frequently only ten pounds (Tr. at 152–54).

In a report dated October 31, 1984, Dr. Fitzgerald again opined that plaintiff was totally disabled. He noted that plaintiff exhibited persistent chronic paraspinal muscle spasm in the L2 to L4 region. Dr. Fitzgerald completed a "Physical Capacities Evaluation" in which he indicated that plaintiff could sit and walk for only one hour in an eight-hour workday, and should do no lifting (Tr. at 155–56).

Dr. Bloch, one of plaintiff's two treating physicians, found that plaintiff was suffering from "severe radiculopathy." Dr. Bloch noted that plaintiff is unable to lift heavy objects and cannot sit or stand for extended periods. Dr. Bloch concluded that plaintiff was totally disabled. In a report dated October 31, 1984, Dr. Memoli, plaintiff's other treating physician, diagnosed plaintiff's condition as a "probable midline herniated nucleus pulposis" in the L3–4 region, with an onset date of June 20, 1983. He noted that plaintiff was exhibiting paraspinal muscle spasms, diminished knee reflexes, and a restricted range of motion. Plaintiff's condition was "unchanged" since his first visit in May 1984. Dr. Memoli concluded that plaintiff was totally disabled (Tr. at 158).

The ALJ issued a decision on December 6, 1984. He found that plaintiff's impairment prevented him from returning to his previous employment, but concluded that plaintiff was capable of performing light work (Tr. at 12–17). Plaintiff subsequently commenced an action in this Court for review of the administrative proceedings. As noted above, plaintiff has moved for judgment on the pleadings, or in the alternative, for remand; the Secretary has also moved for remand.

*Applicable Legal Standards and Scope of Review*

The legal principles that govern the Court's decision on the instant motions are well settled. A claimant is entitled to disability benefits under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1982).

The mere presence of an impairment is not disabling within the meaning of the Act. Rather, the Secretary will find a claimant disabled only if the claimant's

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A) (Supp. I 1983).

The applicable regulations promulgated by the Secretary set forth a five-step sequence to be utilized in evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920 (1985). In *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (per curiam), the Court of Appeals for the Second Circuit summarized this procedure as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

The claimant bears the burden of proof as to the first four steps, while the Secretary bears the burden of proof as to the final one. *Id.* Once the claimant has established a *prima facie* case by showing this his impairment prevents his return to his prior employment, the burden shifts to the Secretary, who must produce evidence to show the existence of alternative substantial gainful work in the economy which the claimant could perform, considering not only his physical capacity, but also his age, education, experience, and training. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

In reaching a conclusion on these issues, the trier of fact should consider both objective and subjective factors. These include (1) objective medical facts, (2) diagnoses or medical opinions based on such facts, (3) subjective testimony by the claimant as to pain or disability, and (4) background data such as the claimant's age, education, and previous work experience. *Parker v. Harris,* 626 F.2d at 231; *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978).

In reviewing the Secretary's determination, it is not the function of this Court to determine *de novo* whether the claimant is disabled. The Secretary's decision may be set aside only if it is based upon legal error or not supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3) (1982); *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

The substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts. *Beane v. Richardson,* 457 F.2d 758, 759 (9th Cir.), *cert. denied,* 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105 (1972); *Rodriguez v. Califano,* 431 F.Supp. 421, 423 (S.D.N.Y.1977). It is the function of the Secretary, and not a reviewing court, to pass on the credibility of wit-

nesses and to resolve material conflicts in the testimony. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

*Discussion*

I have reviewed the record in light of the standards set forth above, and I conclude that the Secretary failed to apply proper legal principles in determining that plaintiff is not disabled. In his decision, the ALJ recognized that his decision was governed by the five-step procedure set forth in the Secretary's regulations and summarized in *Berry*. However, as the Secretary himself acknowledges in his memorandum of law in support of his motion for remand, the ALJ failed to apply that procedure properly in evaluating plaintiff's claim. *See* Memorandum of Law in Support of Defendant's Motion for Remand at 4.

The ALJ found that plaintiff had not engaged in substantial gainful employment since he injured his back, that plaintiff did not have a "listed" impairment, and that plaintiff could not perform his past relevant work (Tr. at 13). He therefore turned to a determination of whether there was other work plaintiff could perform, considering both plaintiff's testimony and the various medical reports offered in evidence.

Asserting that a chiropractor "presumably has no vocational expertise enabling him to match jobs to residual capacities," the ALJ refused to give any weight to Dr. Fitzgerald's opinion that plaintiff was totally disabled. The ALJ also accorded no weight to Dr. Fitzgerald's assessment of plaintiff's residual functional capacity "because of its patent exaggeration and extremism" (Tr. at 15). The ALJ noted the assessments of the two non-examining review physicians that plaintiff could do light work, as well as the assessments of plaintiff's two treating physicians that plaintiff was totally disabled. As for the plaintiff's testimony at the hearing, the ALJ found his claims of pain and limited capacities not credible.

■ From this review of the record, the ALJ concluded that plaintiff had "submitted no persuasive objective medical evidence establishing inability to perform light work," and found that the plaintiff was therefore not disabled within the meaning of the Act (Tr. at 16). However, the ALJ erred in placing the burden on plaintiff to submit medical evidence establishing inability to perform light work. As I noted above, the claimant bears the burden of proof only with regard to the first four of the five steps. Once the claimant has established a *prima facie* case by showing that his impairment prevents his return to his prior employment, *the Secretary* must establish that there is other substantial gainful work in the economy which the claimant could perform. The claimant is not required to show that he is incapable of other work.

■ Although the parties agree that the ALJ applied improper legal principles in reaching his decision, they do not agree on what the appropriate remedy for that error should be. Plaintiff contends that I should reverse the Secretary's decision and remand this case to the Secretary solely for a computation of benefits. He argues that he has met his burden of proving that he is unable to perform his past work and that the Secretary failed to establish alternative work which he could perform. He claims that the Secretary is not entitled to have this case remanded for a second attempt to meet his burden of proof.

On the other hand, the Secretary urges me to remand this case for a new hearing due to a second defect in the ALJ's decision. The Secretary observes that the ALJ made no explicit finding with regard to the duration of plaintiff's disability. Because plaintiff's treating physicians had been treating plaintiff for only six months when they concluded that he was totally disabled, and because they made no estimate of how long plaintiff's disability could be expected to last, the Secretary argues that plaintiff has not demonstrated that he suffers from an impairment that has lasted or can be expected to last for a continuous period of at least twelve months. According to the Secretary, Dr. Fitzgerald, plaintiff's chiropractor, is not an acceptable medical source, and therefore his evaluations cannot be used to satisfy the durational requirement.

Having considered the parties' arguments and the evidence in the record, I conclude that I must remand this case to the Secretary for a *de novo* hearing. I agree with plaintiff that there is no substantial evidence in the record to contradict the September 1984 and October 1984 opinions of his treating physicians that he was totally disabled. Even assuming that the reports of one examining physician and two non-examining review physicians could in some situations provide substantial contradictory evidence to overcome the opinions of a plaintiff's treating physicians, this is not such a case. Here, the examinations upon which the consulting physicians based their evaluations of plaintiff's functional capacity predated the period during which plaintiff's treating physicians treated plaintiff and formed their opinions. Thus, based on the record before me, there is no question that plaintiff was totally disabled between May 1984 and November 1984.

However, as the Secretary correctly observes, this does not satisfy the twelve-month durational requirement set forth in the Act. Because plaintiff's physicians only began treating him in May 1984, I cannot conclude from their reports that plaintiff was disabled for the necessary period prior to May 1984. Plaintiff seeks to overcome this deficiency by relying on evaluations by Dr. Fitzgerald, his chiropractor, and plaintiff's testimony at the hearing. Although the Secretary correctly notes that a chiropractor is not an acceptable medical source, *see* 20 C.F.R. § 404.-1513 (1985), it is clear that a chiropractor's reports may be given some weight in determining whether a claimant is disabled, *see, id.* § 404.1516; *see also Rivera v. Heckler*, 618 F.Supp. 1173, 1175–76 & n. 2 (S.D.N.Y. 1985). However, unlike the evidence of plaintiff's disability after May 1984, the evidence prior to May 1984 is not uncontradicted. In light of the reports of the examining and non-examining review physicians, I am unable to say that the Secretary should have found that plaintiff was disabled prior to May 1984. Accordingly, it would be inappropriate for me to reverse the Secretary's decision and remand solely for a computation of benefits. I believe the more appropriate result is to remand this case to the Secretary for a *de novo* hearing. This will afford plaintiff the opportunity to submit additional evidence to support his disability claim. Assuming that plaintiff submits evidence from his treating physicians that he is still totally disabled, and that the Secretary submits no additional evidence, plaintiff will be entitled to benefits. Although I am unable to set a time limit on the Secretary's decision following remand, under the circumstances of this case I think it appropriate to urge the Secretary to conclude any further proceedings as soon as is feasible.

*Conclusion*

For the reasons set forth above, plaintiff's motion for judgment on the pleadings is denied. Plaintiff's alternative motion for remand and the Secretary's motion for remand are granted. This case must be and hereby is remanded to the Secretary for a *de novo* hearing or other proceedings consistent with this Opinion and Order.

SO ORDERED.